IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AVID BOOKSHOP LLC, a business in the State of Georgia, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| v. | ) ) | |
| KEYBO TAYLOR, the Sheriff of Gwinnett County, Georgia, and BENJAMIN HAYNES, Jail Commander of the Gwinnett County Jail, in their official and individual capacities. | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff Avid Bookshop LLC ("Avid") brings this action for damages and for declaratory and injunctive relief against Defendants Keybo Taylor and Benjamin Haynes, individually and in their official capacities as, respectively, the Sheriff of  Gwinnett County, Georgia and the Jail Commander of the Gwinnett County Jail. In  support thereof, Plaintiff offers the following:

## NATURE OF THE CASE

1.      Avid is a community-based, independently-owned bookstore located in Athens, Georgia.

2.     Avid sells books at its physical location and routinely ships book orders through the mail.

3.     Avid's staff members are knowledgeable about current and historical local issues in Georgia that may be relevant to customers' reading interests and book choices.

4.     Sometimes related to this knowledge of local issues and sometimes not, Avid staff members frequently make recommendations as part of the process of helping customers choose what book(s) to purchase. This recommendation process entails Avid staff members communicating their personal preferences, views, and opinions to customers.

5.     Customers, in turn, engage in their own free expression by selecting what books to purchase either for themselves, or for Avid to ship to a friend or relative, including to residents at the Gwinnett County Jail ("the Jail").

6.     Because of Avid's local community ties and its personalized services to customers, purchasing a book from Avid and having Avid mail it to a Jail resident is not the same as ordering the book from an online retailer such as Amazon or an anonymous publisher.

7.     The Gwinnett County Jail is located in Lawrenceville, Georgia and operated by the Gwinnett County Sheriff's Office under the leadership of Sheriff

Keybo Taylor and Jail Commander Benjamin Haynes.[1]

8.     Over the course of any given year, 35,000 to 37,000 individuals are incarcerated at the Gwinnett County Jail.[2]

9.     Residents at the Jail are largely shut off from the outside world. Reading is one of few means available to them for education, self-improvement and entertainment while they are incarcerated.

10.    Avid sells a wide range of books, from best sellers to limited print runs, and its staff members are well-situated to make recommendations to friends or family members who are selecting and purchasing books for Avid to ship to Jail residents.

11.    However, the Jail's policy, attached as Exhibit A, only allows publishers and "Authorized Retailers" to send books to Jail residents (hereinafter "Authorized Retailer Policy" or "the Policy").

12.    Moreover, under the direction and authority of Sheriff Taylor and Jail Commander Haynes, the Policy is applied categorically to exclude physical bookstores from being Authorized Retailers. This is purportedly to prevent contraband from being smuggled in books shipped by physical bookstores, although there is no evidence that this has ever occurred.

---

[1] See https://www.gwinnettcountysheriff.org/commandstaff.
[2] *See* https://www.gwinnettcounty.com/web/gwinnett/departments/gwinnettcountysheriff.

13.     The Policy, as applied, operates as a ban and a prior restraint on Avid, a physical "brick and mortar" bookstore, sending books to Jail residents.

14.     This as-applied ban and prior restraint violates the First Amendment because it is not reasonably related to legitimate penological interests and is an exaggerated response to the Jail's security objectives.

15.     This as-applied ban and prior restraint prevents Avid from communicating with Jail residents, including relaying the expressive choices of their friends and family members who have purchased books for Avid to send, and prevents Jail residents from receiving those communications.

16.     Additionally, neither the Jail's Authorized Retailer Policy, nor any other Jail policy:

    a.      identifies which book sellers the Jail has designated to be Authorized Retailers,

    b.      contains any criteria or standards for designating Authorized Retailers,

    c.      sets forth any process for applying to become an Authorized Retailer, nor

    d.      provides any process for appealing being denied Authorized Retailer status.

17.     In light of the foregoing, the Authorized Retailer Policy affords Jail

officials unfettered discretion to select which book sellers may communicate with Jail residents by sending them books and from which book sellers Jail residents may receive communications.

18.    The Policy thus operates as an unconstitutional permitting scheme that unduly burdens Avid's right to communicate with residents of the Jail in violation of the First Amendment.

19.    Additionally, because the Authorized Retailer Policy contains no criteria or standards, the Policy authorizes and encourages arbitrary and discriminatory enforcement with respect to who the Jail deems to be an Authorized Retailer, meaning these determinations will be made on an *ad hoc* and subjective basis. The Policy is therefore unconstitutionally vague in violation of the Fourteenth Amendment.

20.    Avid requests that this Court declare the Jail's Authorized Retailer Policy unconstitutional, enjoin the Defendants from enforcing the Policy, and that a jury award nominal and compensatory damages for the deprivation of Avid's constitutional rights.

## **PARTIES**

21.    Avid Bookshop is a local, community-based bookstore located in Athens, Georgia.

22.    Defendant Keybo Taylor is the Sheriff of Gwinnett County.

23.     As the Georgia Sheriffs' Association acknowledges, "[o]perational responsibility for county jails is the sole responsibility of the sheriff."[3]

24.     Sheriff Taylor is the final policy maker for the Jail and is responsible for approving, maintaining, enforcing, and applying its Authorized Retailer Policy.

25.     Taylor is being sued in both his individual and official capacities. He is being sued in his official capacity for declaratory and injunctive relief only. At all relevant times, he has acted under color of state law.

26.     Defendant Benjamin Haynes is the Jail Commander of the Gwinnett County Jail.

27.     Haynes is responsible for, among other things, enforcing and applying policies approved and maintained by Defendant Taylor at the Gwinnett County Jail, including the Authorized Retailer Policy.

28.     Haynes is being sued in both his individual and official capacities.  He is being sued in his official capacity for declaratory and injunctive relief only. At all relevant times, he has acted under color of state law.

## JURISDICTION AND VENUE

29.     Avid brings this action under the First and Fourteenth Amendments of the United States Constitution. The asserted claims present a federal question

---

[3] See https://georgiasheriffs.org/programs-services/jail-management/#:~:text=Operational%20responsibility%20for%20county%20jails,inmates%20housed%20in%20county%20jails.

under 42 U.S.C. § 1983. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

30.     Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district.

31.     Venue is also proper in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391(b) because the Gwinnett County Jail is located at 2900 University Parkway in Lawrenceville, Georgia 30043, which is within the geographic boundary lines of this judicial district and division.

## FACTUAL ALLEGATIONS

*Nature of Avid's Business and Expression*

32.     Avid's mission is not merely to sell books, but to "stand[] up for human rights, equality, and the freedom to read."[4]

33.     Avid intentionally curates its book inventory to support its mission of "amplify[ing] underrepresented voices" and "provid[ing] a selection that celebrates diversity and condemns injustice."

34.     Avid also organizes community events, such as author readings and book clubs.

---

[4] Avid Bookshop, *About Us*, www.AVIDBOOKSHOP.COM, https://www.avidbookshop.com/about-us (last visited Sept. 27, 2023).

35.    Avid additionally publishes newsletters and book reviews, some of which appear in the public-facing *The Southern Bookseller Review*.

36.    Avid staff members ultimately provide a personalized service that involves expressing their preferences, views, and opinions in helping customers select which books to purchase based on the customers' reading interests and goals.

37.    This includes making recommendations for customers wishing to send books to residents at the Gwinnett County Jail.

38.    Avid customers, in turn, engage in free expression by selecting what books to purchase either for themselves or for Avid to ship to a friend or relative, including to residents at the Gwinnett County Jail.

39.    Avid has a protected liberty and speech interest in communicating with residents at the Gwinnett County Jail by sending them books.

40.    The residents of the Jail, in turn, have a protected liberty and speech interest in receiving books from Avid.

41.    When customers purchase books from Avid for Avid to then ship to a resident at the Gwinnett County Jail, Avid packages and ships a new copy of the purchased title. Only Avid employees have contact with the selected book(s) before shipment.

*Avid's Attempts to Mail Books to the Gwinnett County Jail*

<u>Tina Ridley</u>

42.     On May 15, 2023, customer Tina Ridley purchased three books from Avid to send to Gwinnett County Jail resident James Bryant III.

43.     Ms. Ridley purchased one of the books based on an Avid staff member's suggestion.

44.     Ms. Ridley mailed the books to the Gwinnett County Jail herself in a package that also contained a postcard addressed to Mr. Bryant.

45.     The Jail rejected Ms. Ridley's shipment of books and returned them with a Returned Mail Notification Form ("the Form"). *See* Exhibit B.

46.     There was no indication on the Form that the inclusion of the postcard was the Jail's reason for rejecting the package. The Form did not reference the postcard at all.

47.     On July 7, 2023, on behalf of Ms. Ridley, Avid operations manager Luis Correa mailed a package to Mr. Bryant at the Gwinnett County Jail containing brand new copies of the same three books, all paperback, that Ms. Ridley had unsuccessfully tried to mail to Mr. Bryan herself.

48.     Mr. Correa had received the three books directly from Avid's warehouse and packaged them himself. Mr. Correa was the only individual to handle these three books in the store.

49.     Mr. Correa took care to follow the Jail's Authorized Retailer Policy which requires all packages containing books to "have a packing slip or receipt stating what is in the package."[5]

50.     Accordingly, the package Mr. Correa shipped included a packing list and receipt stating what books were in the package.

51.     The package Mr. Correa sent was returned on July 11, 2023, with the justification that they were not sent from an Authorized Retailer and the code "ATW 7-5-23."  *See* Exhibit B. There was no explanation of what that code meant.

<u>Dan Matthews</u>

52.     On May 9, 2023, customer Dan Matthews purchased three books at Avid and independently mailed them to recipient James Bryant III at the Gwinnett County Jail.

53.     The package Mr. Matthews sent was rejected and returned to him by the Gwinnett County Jail's mailroom.

54.     On May 18, 2023, Mr. Matthews returned to Avid with the rejected package and requested that Avid mail two of the books to the Jail on his behalf.

55.     Mr. Correa, operations manager at Avid, mailed new paperback copies

---

[5]See
https://www.gwinnettcounty.com/web/gwinnett/departments/gwinnettcountysheriff/organization/operationsbureau/jailoperationsdivision/jailadministrationsection#:~:text=Mail%20Policy,can%20be%20plain%20or%20pictured (scroll down to "Non-Local Newspapers, Magazines, and Books").

of the two books to the Jail, along with a packing list and receipt.

56.     On May 19, 2023, Mr. Matthews returned to Avid again to request that Avid mail the third book, on his behalf, to the Jail.

57.     Mr. Correa mailed a new paperback copy of the third book to the Jail, along with a packing list and receipt.

58.     Avid received back both packages it had sent to Mr. Bryant on Mr. Matthews' behalf. The reason for the rejections, as stated by stickers placed on each package, was that the books were "[n]ot sent from publisher/authorized retailer." *See* Exhibit C.

*Avid's Communications with Jail Officials*

59.     On May 31, 2023, Avid operations manager Luis Correa called the Gwinnett County Jail to inquire why the Jail had rejected the packages from Avid.

60.     On the call, Mr. Correa spoke with Jail Deputy Andaloro who stated that Avid was unable to become an Authorized Retailer pursuant to the Jail's Policy for shipment of books.

61.     Deputy Andaloro stated that because Avid was a local bookstore, friends and relatives could enter the bookstore and place contraband inside the books that were sent to the Jail.

62.     Deputy Andaloro stated that the Jail only accepts book packages from Amazon and Barnes & Noble, "but even Barnes & Noble, we've been having

problems with them."

63.     When Mr. Correa asked to speak to Deputy Andaloro's supervisor,

Deputy Andaloro stated that his supervisor had tasked him with explaining the

Authorized Retailer Policy, implying the supervisor was not willing to speak with

Mr. Correa.

*The Jail's Authorized Retailer Policy*

64.     The Jail's Authorized Retailer Policy, which is posted on Gwinnett

County's official website, states:

> **Magazines/non-local newspaper subscriptions and books will be accepted as long as they are mailed directly from the publisher or authorized retailer.**
>
> **\*We DO NOT accept packages from EBAY or Amazon independent sellers.**
>
> **Hardbound books (including pamphlets and booklets) will not be accepted.**
>
> **All packages received for inmates by US mail or UPS containing books, newspapers, or magazines must be PRE-PAID. They must have a packing slip or receipt stating what is in the package. Any packages that do not have these slips or contain contraband items will be returned at the sender's expense.**
> **Books and magazines must not exceed 8 - 11 inches in size, four pounds in weight, and must not exceed a quantity of four books and/or magazines in one shipment.**[6]

---

[6]See
https://www.gwinnettcounty.com/web/gwinnett/departments/gwinnettcountysheriff/organization/operationsbureau/jailoperationsdivision/jailadministrationsection#:~:text=Mail%20Policy,can%2

65.     Neither Gwinnett County's website nor the Gwinnett County Sheriff's webpage contains any other mention of the foregoing Authorized Retailer Policy, nor does either site host any other mail policy governing the shipment of books to the Jail.

66.     No further information on the Jail's Authorized Retailer Policy was produced in response to an Open Records Request ("ORR") sent to Gwinnett County, nor did the County produce any documents relating to incidents of contraband being found inside books mailed to the Gwinnett County Jail.[7]

67.     Neither the Jail's Authorized Retailer Policy, nor any other Jail policy:

    a.    identifies who the Jail has designated to be Authorized Retailers,

    b.    contains any criteria or standards for designating Authorized Retailers,

    c.    sets forth any process for applying to become an Authorized

---

0be%20plain%20or%20pictured (scroll down to "Non-Local Newspapers, Magazines, and Books").

[7] The ORR requested:
- Any mailroom policies, procedures, memos or other written guidance regarding how mail, including packages, is screened, accepted, or rejected at the Gwinnett County Jail.
- Any training materials provided to mailroom employees at the Gwinnett County Jail.
- Any documents relating to incidents of contraband being found inside books mailed to the Gwinnett County Jail.

Retailer, nor

    d.    provides any process for appealing being denied Authorized Retailer status.

68.    As the Sheriff of Gwinnett County, Defendant Keybo Taylor is responsible for approving, maintaining, enforcing, and applying the Jail's policies, including its Authorized Retailer Policy.

69.    Jail Commander Benjamin Haynes, as the top-ranking official in the Sheriff's Jail Division is responsible for enforcing and applying the Jail's policies that are approved and maintained by Defendant Taylor, including the Authorized Retailer Policy.

*Avid Attempts to Appeal the Rejected Book Shipments*

70.    On June 23, 2023, counsel for Avid sent a letter seeking to appeal the Jail's rejection of its book shipments to Jail resident James Bryant III.

71.    Dan W. Mayfield, General Counsel for the Gwinnett County Sheriff's Office, replied via email to the letter, stating:

> **Residents can receive books if they come from one of our approved suppliers. This is to ensure that associates of the residents cannot soak pages in drugs or otherwise create safety issues. We cannot approve bookstores, like Avid, that are open to the public.**

72.    Mr. Mayfield's email referenced the postcard that Tina Ridley had included in her own mailing to Mr. Bryant, misattributing the postcard as having

been included in one of Avid's book shipments.

73.     Mr. Mayfield's email, which echoes Jail Deputy Andaloro's comments over the phone to Avid, makes clear that the Jail's Authorized Retailer Policy is being applied to exclude "brick and mortar" bookstores like Avid even though this categorical exclusion is not stated on the face of the Policy.

74.     Moreover, the exclusion of "brick and mortar" bookstores appears to have been inconsistently applied with respect to the mega-chain book seller Barnes & Noble, which has physical bookstores situated within local communities but arguably less quality control over who comes into contact with books before they are shipped than does a small, single-store operation like Avid.

75.     This inconsistency raises First and Fourteenth Amendment concerns that Authorized Retailer status is not reasonably related to legitimate penological interests and is being determined on an *ad hoc*, subjective basis according to the unbridled discretion of Jail officials.

76.     Mr. Mayfield's email further stated:

> **Avid can order books from publishers for direct shipment to the jail residents. We are pleased to say that we are providing tablets to our residents that include more than 50,000 free e-books. Additional books can be approved by staff and added to the list.**

77.     It is not a reasonable substitute for Avid to order books from publishers to be shipped to residents at the Jail.

78.     First, this would require Avid to disclose Jail residents' identity (and the fact that they are incarcerated) to third party publishers without Jail residents' consent.

79.     Second, Avid also cannot vouch for the accuracy and quality of materials that are shipped directly by a publisher to a recipient. In Avid's experience, publishers frequently ship the wrong book or damaged versions of the correct book.

80.     Third, there is no appreciable increase in security between an anonymous publisher's employee packaging and shipping a new book to a Jail resident and an Avid employee packaging and shipping a new book to the Jail. The small number of Avid employees and Avid's interest in preserving its ability to ship books to Jail residents weigh in favor of Avid being an equally if not more trustworthy book seller than an anonymous publisher with anonymous employees.

81.     E-books are also not a reasonable substitute for allowing Avid to ship books to Jail residents. Even if the curated and often limited print run books that Avid carries were to be available as e-books (and often they are not), a Jail resident would have to know about the particular book title to be able to access it.

82.     In contrast, an integral part of Avid's communication in shipping books to Jail residents is that a friend or family member has exercised his or her own expressive rights to select a book(s), often with Avid's input, for Avid

to send to the Jail resident.

83.     That expressive communication is lost if the task falls to Jail residents to find out about and then access a book title for themselves via e-books.

## CAUSES OF ACTION

### COUNT I
*Authorized Retailer Policy*
*Violates the First Amendment*
*under 42 U.S.C. § 1983*

84.     Avid is a retailer engaged in selling books.

85.     Avid, like other booksellers such as Amazon, has the ability to ship books directly to Jail residents with no member of the public first handling the book; only Avid employees have access to the book before it is mailed.

86.     Avid has a protected First Amendment interest in communicating with residents at the Jail by mailing books to them. This protected interest includes not only Avid's right to communicate on its own behalf, but Avid's right to act as the intermediary who communicates the expressive choice of the Jail resident's friend or family member who selected and purchased the book(s) for Avid to mail to the resident.

87.     Jail residents, in turn, have a protected First Amendment interest in receiving communications from Avid, and indirectly from friends and family members, in the form of book shipments.

88.    The Jail's Authorized Retailer Policy, as approved, maintained,

enforced, and applied under the direction and authority of Sheriff Taylor and Jail

Commander Haynes, only permits book shipments from publishers and Authorized

Retailers. See Exhibit A.

89.    Neither the Jail's Authorized Retailer Policy, nor any other Jail

policy:

a.    identifies who the Jail has designated to be Authorized
Retailers,

b.    contains any criteria or standards for designating Authorized
Retailers,

c.    sets forth any process for applying to become an Authorized
Retailer, nor

d.    provides any process for appealing being denied Authorized
Retailer status.

90.    Under the direction and authority of Sheriff Taylor and Jail Commander

Haynes, the Jail's Authorized Retailer Policy is being applied and enforced to bar

community-based, "brick and mortar" bookstores like Avid that are open to the

public from becoming an Authorized Retailer, meaning Avid may not

communicate with residents at the Jail by sending them books.

91.    Indeed, this was exactly Avid's experience. Each time Avid tried to

communicate with a resident at the Jail by mailing him books, the book shipment was rejected by the Jail as "[n]ot sent from publisher/authorized retailer."

92.    "[R]estrictive prison regulations are permissible only if they are 'reasonably related' to legitimate penological interests,' and are not an 'exaggerated response' to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (quoting *Turner v. Safley*, 482 U.S. 78 (1987)).

93.    The Jail's Authorized Retailer Policy is not reasonably related to a legitimate penological interest. There is no logical connection between the Jail's security concerns and its decision to allow certain book sellers, such as Amazon and Barnes & Noble (which has physical bookstores open to the public), to become Authorized Retailers, while disallowing community-based, physical book stores from being so-designated.

94.    Because Avid can mail new books to Jail residents without any member of the public having had access to the books, book shipments from Avid do not pose a heightened risk of contraband being smuggled into the Jail as compared to book shipments from an Amazon warehouse, an anonymous publisher's warehouse, or a large bookstore chain like Barnes & Noble.

95.    Moreover, application of the Authorized Retailer Policy to categorically ban an entire class of book sellers (i.e., "brick and mortar" community book sellers that are open to the public) from communicating with Jail

residents is an exaggerated response to any concern of potentially smuggled

contraband. This is so far evidenced by the Jail's failure to produce any documents

relating to incidents of contraband being found inside books mailed to the Jail in

response to an Open Records Request seeking the same.

96.     Less restrictive alternatives could satisfy the Jail's security objectives.

For example, the Jail could require that bookstores with physical locations ship

new books that have only been handled by the book store's staff – as Avid does --

rather than blanketly banning all shipments from physical bookstores.

97.     Moreover, Avid seeks to communicate with Jail residents by mailing

books to them that have been selected by their friends and family. So long as book

shipments from Avid are categorically rejected by the Jail, Avid has no alternative

means by which to exercise its First Amendment rights, including acting as an

intermediary to communicate to Jail residents the free expression of their friends

and family members who selected the books. The proposed alternatives of e-books,

or of Avid ordering books from publishers to be shipped to Jail residents, are not

reasonable substitutes.

98.     Accommodating Avid's First Amendment rights will not have a

detrimental impact on the Jail's employees or on other individuals at the Jail who

still must open and screen all book shipments coming into the Jail, regardless of

the identity of the publisher or retailer who sent the shipment.

99.    The onus for complying with any procedural requirements for "brick and mortar" book stores -- such as sending new books that have only been handled by the book store's staff -- could reasonably be placed on the book store. For instance, the Jail could require the book stores to print out a compliance form from the County's website, sign it, and include it with any book shipment sent to the Jail.

100.    These plausible "ready" alternative regulations to the Jail's current Authorized Retailer Policy would allow Avid to exercise its First Amendment rights to communicate with Jail residents, both on its own behalf and as an intermediary for Jail residents' friends and family members, without requiring the Jail to expend significant additional resources and while still satisfying the Jail's security objectives.

101.    These plausible "ready" alternatives further demonstrate that the Jail's current Authorized Retailer Policy as applied to Avid is an exaggerated response that is not reasonably related to legitimate penological interests given Avid's ability to ship new books that have not been handled by members of the public is equal to, if not greater than, that of Amazon, Barnes & Noble, or an anonymous publisher.

## COUNT II

*Prior Restraint*
*Violation of the First Amendment*
*under 42 U.S.C.  1983*

102.    The Jail's Authorized Retailer Policy, as applied under the direction

and authority of Sheriff Taylor and Jail Commander Haynes, categorically

excludes physical bookstores from being approved as Authorized Retailers who

are allowed to ship books to residents of the Jail.

103.    The Policy, as applied, therefore operates as a ban and a prior restraint

on Avid, a community-based "brick and mortar" bookstore, being allowed to

communicate with Jail residents by sending them books. *See Guajardo v. Estelle*,

580 F.2d 748, 754–55 (5th Cir. 1978) (analyzing as a prior restraint a corrections

department rule requiring prior departmental approval before correspondence is

allowed with an inmate); *see also Wright v. City of St. Petersburg, Fla.*, 833 F.3d

1291, 1299 (11th Cir. 2016) (recognizing that requiring a license in order for one

to be allowed to exercise one's First Amendment freedoms is a type of prior

restraint).

104.    Any prior restraint on expression carries a presumption against

its constitutional validity. *See Nebraska Press Association v. Stuart*, 427 U.S. 539

(1976); *New York Times v. United States*, 403 U.S. 713 (1971); *Wright v. City of*

*St. Petersburg, Fla.*, 833 F.3d 1291, 1299 (11th Cir. 2016).

105.    Prior restraint under the Jail's Authorized Retailer Policy on Avid's

ability to mail books to Jail residents violates the First Amendment because it is not reasonably related to legitimate penological interests and is an exaggerated response to the Jail's security objectives.

**COUNT III**
*Unconstitutional Permitting Scheme*
*Violation of the First Amendment*
*under 42 U.S.C. 1983*

106.   The Jail's Authorized Retailer Policy, which is approved, maintained, enforced, and applied under the direction and authority of Sheriff Taylor and Jail Commander Haynes, functions as a permitting system because it allows only certain book sellers of whom the Jail approves to communicate with Jail residents by mailing them books.

107.   "Permitting ordinances . . . are classic examples of prior restraints . . . Without a permit or license, the would-be speaker subject to the prior restraint cannot legally engage in the speech that the permit or license authorizes." *Barrett v. Walker County School District*, 872 F.3d 1209, 1223 (11th Cir. 2017).

108.   Here, Avid is being denied Authorized Retailer status (i.e., is being denied a permit to communicate with Jail residents by mailing them books) because it is a physical bookstore that is open to the public.

109.   Consequently, the Authorized Retailer Policy operates as an unconstitutional prior restraint on Avid's speech.

110.   Additionally, unbridled discretion in violation of the First Amendment

exists where "[a]n official can grant or deny a permit for any reason she wishes." *Id.* at 1221.

111.   Here, the Authorized Retailer Policy contains no criteria or standards for designating book sellers as Authorized Retailers. This, in turn, allows Jail officials to grant or deny Authorized Retailer status for any reason they wish in violation of the First Amendment. *See Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (to pass constitutional muster "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority") (internal quotations omitted).

## COUNT IV
*Unconstitutional Vagueness*
*Violation of the Fourteenth Amendment*
*Under 42 U.S.C. § 1983*

112.   The Gwinnett County Jail's Authorized Retailer Policy, which is approved, maintained, enforced, and applied under the direction and authority of Sheriff Taylor and Jail Commander Haynes, contains no criteria or standards for designating Authorized Retailers who are allowed to exercise their First Amendment right to communicate with Jail residents by mailing them books. *See* Exhibit A.

113.   Restrictions on protected speech are subject to a heightened vagueness standard. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 793 (2011).

114.   A government enactment "can be impermissibly vague . . . if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

115.   Because there are no criteria or standards under the Jail's Authorized Retailer Policy for designating which book sellers will be deemed Authorized Retailers, "there is the possibility if not likelihood that the jail is resolving such matters on an ad hoc and subjective basis." *Prison Legal News v. Babeu*, 933 F. Supp. 2d 1188, 1202 (D.Ariz, 2013).

116.   In other words, the lack of announced criteria or standards allows for arbitrary and potentially discriminatory or even viewpoint-based application of the Authorized Retailer Policy to restrict the First Amendment right of book sellers to communicate with Jail residents.

117.   The Authorized Retailer Policy is therefore unconstitutionally vague in violation of the Fourteenth Amendment and should be enjoined from enforcement. *See United States v. Williams*, 553 U.S. 285, 304-06 (2008) (a government enactment may be considered vague and therefore facially invalid when it is "unclear whether it regulates a substantial amount of protected speech," since such provisions rely on "wholly subjective judgments" and invite discriminatory enforcement).

## **REQUEST FOR RELIEF**

Based on the foregoing factual and legal pleadings, Avid respectfully requests that this Court:

a.     Issue a declaratory judgment that the Gwinnett County Jail's Authorized Retailer Policy violates the First and Fourteenth Amendments of the United States Constitution;

b.     Enjoin enforcement of the Authorized Retailer Policy;

c.     Award nominal and compensatory damages for the violation of Avid's constitutional rights in an amount to be determined by a reasonable jury;

d.     Award pre- and post-judgment interest;

e.     Award court costs and attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

f.     Order such relief as the Court deems just and equitable.

Respectfully submitted this this 15th day of March, 2024.

<table>
<tr>
<td>

*/s/ Clare R. Norins*
Clare R. Norins, Director
Georgia Bar No. 575364
cnorins@uga.edu
FIRST AMENDMENT CLINIC*
University of Georgia School of Law
Post Office Box 388
Athens, Georgia 30603
(706) 542-1419 (phone)

</td>
<td>

*/s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
zack@mitchellshapiro.com
MITCHELL SHAPIRO GREENAMYRE &
FUNT LLP
881 Piedmont Ave
Atlanta, GA 30309
404-812-4751 (phone)

</td>
</tr>
</table>

*\*Thanks to Alex Klein, Madi Blair, Allyson Veile, and Ashley Fox for their contributions to this pleading.*

*Counsel for Plaintiff Avid Bookshop*

*Exhibit A*



**Non-Local Newspapers, Magazines, and Books**

Magazines/non-local newspaper subscriptions and books will be accepted as long as they are mailed directly from the publisher or authorized retailer.

*We **DO NOT** accept packages from EBAY or Amazon independent sellers.

Hardbound books (including pamphlets and booklets) **will not** be accepted.

All packages received for inmates by US mail or UPS containing books, newspapers, or magazines must be PRE-PAID. They must have a packing slip or receipt stating what is in the package. Any packages that do not have these slips or contain contraband items will be returned at the sender's expense.

Books and magazines must not exceed 8 - 11 inches in size, four pounds in weight, and must not exceed a quantity of four books and/or magazines in one shipment.

*Exhibit B*

## GWINNETT COUNTY SHERIFF'S OFFICE

### RETURNED MAIL NOTIFICATION

Bryant, James          99141062          1C-201B
INMATE NAME            INMATE ID          HOUSING UNIT

Mail (Package/Magazine) addressed to you was received from:

Name: Nina Kidley

Address:

_____

The item(s) has/have been returned to the Sender for the following reason(s):

_____ Sexually Explicit Photos                    _____ No receipt/invoice/packing slip

_____ Hard Cover Books                    ✓ Not from publisher/authorized
                                         Retailer "the Answer IS Alex Prebek
                                         " Just Mercy"
_____ Sexually graphic content and/or    _____ Other, "Ted Ne How it Ends

content that violates policy

_____                    5/22/23
Inmate Services                          Date

Be advised that if your book was rejected for "unacceptable content", "sexually graphic" or "advocates racial/religious hatred" content, that the book may already be in the facility. If this is the case, incoming books are scanned, but cannot be read cover-to-cover. Therefore, content may have gotten through until the offending material was discovered. Once discovered, the book is no longer permitted and will be returned. Please refer to your inmate Handbook for content that is not permitted. Additionally, we are not responsible for the amount of time it takes for the book to arrive at its destination or the time it takes for the refund. The date on this form is the date your item was received by Inmate Services, was processed, and returned for pick-up.

If your book(s) was returned due to "No Receipt"; please make sure the purchaser selects "gift receipt" when buying through Amazon.

28

*Exhibit C*

