IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AVID BOOKSHOP LLC, a business
in the State of Georgia,

     Plaintiff,

v.

KEYBO TAYLOR, the Sheriff of
Gwinnett County, Georgia, in their
official and individual capacities, and
BENJAMIN HAYNES, Jail
Commander of the Gwinnett County
Jail, in their official and individual
capacities,

     Defendants.

CIVIL ACTION FILE

NO. 1:24-CV-1135-MHC

## ORDER

This case comes before the Court on Defendants Keybo Taylor ("Taylor")

and Benjamin Haynes ("Haynes")'s Motion to Dismiss Plaintiff's Complaint

[Doc. 11].

## I.    BACKGROUND[1]

Avid is an independently owned bookstore in Athens, Georgia, that sells

books through its physical location and via mail.  Compl. ¶¶ 1-2.  Avid's mission,

_____

[1] Because this case is before the Court on a motion to dismiss, the facts are

beyond selling books, is to "stand up for human rights, equality, and the freedom to read." Id. ¶ 32 (alteration accepted).  It intentionally curates a selection of books, including limited print run books, that "amplif[ies] underrepresented voices" and "celebrates diversity and condemns injustice." Id. ¶¶ 10, 33, 81.  Employees frequently express their opinions by making recommendations to customers. Id. ¶¶ 4, 10, 36-37.  Customers likewise "engage in free expression" by purchasing books or selecting books for Avid to ship, including to residents at the Gwinnett County Jail ("the Jail"). Id. ¶ 38.  When a customer purchases a book for shipping to the Jail, Avid packages and ships a new copy of the title, and only Avid employees have contact with the purchased book. Id. ¶ 41.

Avid filed the above-styled lawsuit to challenge the Jail's Authorized Retailer Policy, which only allows publishers and authorized retailers to ship books to Jail residents but provides no further information about becoming an authorized retailer ("the Policy"). Id. ¶¶ 11, 88-89.  More specifically, the Policy provides:

> Magazines/non-local newspaper subscriptions and books will be accepted as long as they are mailed directly from the publisher or authorized retailer.
>
> *We **DO NOT** accept packages from EBAY or Amazon independent sellers.

---

presented as alleged in Plaintiff Avid Bookshop LLC ("Avid")'s Verified Complaint.  Verified Compl. ("Compl.") [Doc. 1].  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

> Hardbound books (including pamphlets and booklets) **will not** be accepted.
>
> All packages received for inmates by US mail or UPS containing books, newspapers, or magazines must be PRE-PAID. They must have a packing slip or receipt stating what is in the package. Any packages that do not have these slips or contain contraband items will be returned at the sender's expense.
>
> Books and magazines must not exceed 8-11 inches in size, four pounds in weight, and must not exceed a quantity of four books and/or magazines in one shipment.

The Policy, Compl. Ex. A [Doc. 1 at 27].  On two occasions in May 2023, Avid attempted to send books directly to the Jail but the packages were returned because they were "not sent from publisher/authorized retailer."  Id. ¶¶ 42-58 (alteration accepted).  When Luis Correa, Avid's operations manager, called the Jail to ask how to become an authorized retailer, Jail staff "stated that the Jail only accepts book packages from Amazon and Barnes & Noble" and that, "because Avid was a local bookstore, friends and relatives could enter the bookstore and place contraband inside the books that were sent to the Jail."  Id. ¶¶ 59-62.  In a later email, Jail staff further stated, "Residents can receive books if they come from one of our approved suppliers.  This is to ensure that associates of the residents cannot soak pages in drugs or otherwise create safety issues.  We cannot approve bookstores, like Avid, that are open to the public."  Id. ¶ 71.  Avid alleges that

these communications demonstrate that the Policy, as applied, excludes "brick-and-mortar" stores from authorized retailer status, even though this is not stated on the face of the Policy. Id. ¶ 73. Further, Avid alleges that this brick-and-mortar exclusion is applied inconsistently, since Barnes & Noble has physical store locations but received pre-authorization. Id. ¶ 74.

Jail staff stated that, instead of direct shipment, Avid could either provide e-books or order books to be sent directly from the publishers to inmates. Id. ¶ 76. Avid alleges that these substitutes are unreasonable for several reasons. Id. ¶ 77. First, direct shipment from the publishers "would require Avid to disclose Jail residents' identity (and the fact that they are incarcerated) to third party publishers without Jail residents' consent." Id. ¶ 78. Second, Avid cannot control the accuracy and quality of books shipped directly from publishers, and publishers "frequently ship the wrong book or damaged versions of the correct book." Id. ¶ 79. Third, shipping directly from a publisher provides no "appreciable increase" in security compared to shipping from Avid, because Avid can ship books securely and has a small number of employees. Id. ¶ 80. Finally, many books in Avid's curated collection are not available as e-books and, even if they were available, the Jail resident would need to know about the title to access it, completely removing the expressive communication from their loved ones and Avid. Id. ¶¶ 81-83.

Based on the foregoing, Avid filed its Complaint on March 15, 2024, asserting claims against Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983.  Avid alleges that the Policy (1) violates the First Amendment (Count I); (2) constitutes a prior restraint on expression in violation of the First Amendment (Count II); (3) constitutes an unconstitutional permitting scheme in violation of the First Amendment (Count III); and (4) is unconstitutionally vague in violation of the Fourteenth Amendment (Count IV).  Id. ¶¶ 84-117.  Avid seeks to recover damages for Defendants' alleged violation of its constitutional rights, along with attorneys' fees, costs, and equitable relief.  Id. at Request for Relief.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

> is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader.  Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

Defendants seek dismissal of Avid's Section 1983 claims on the grounds that (1) Avid fails to allege a constitutional violation and (2) even if Avid's constitutional rights were violated, Defendants did not violate clearly established law, thus entitling them to qualified immunity from Avid's claims against them in their individual capacities.  Defs.' Br. in Supp. of Their Mot. to Dismiss Pl.'s Compl. ("Defs.' Br.") [Doc. 11-1] at 7-13.  Defendants also contend that Avid's official capacity claim against Haynes is duplicative of its official capacity claim against Taylor.  Id. at 16.

"It is well established that section 1983 itself creates no substantive rights; it merely provides a remedy for deprivations of federal rights established elsewhere." Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)).  To sustain a cause of action based on Section 1983, a litigant must establish two elements: (1) that he or she suffered a deprivation of a right, privilege, or immunity protected by the U.S. Constitution or federal law, and (2) that the act or omission causing the deprivation was committed by a person acting under color of state law.  Livadas v. Bradshaw, 512 U.S. 107, 132 (1994); Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998).  "[S]ection 1983 imposes liability only 'for violations of rights

protected by the Constitution, not for violations of duties of care arising out of tort law.'" Wideman, 826 F.2d at 1032 (quoting Baker v. McCollan, 443 U.S. 137, 146 (1979)). Accordingly, "[i]n any § 1983 action, a court must determine 'whether the Plaintiff has been deprived of a right secured by the Constitution and laws of the United States.'" Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir. 2011) (quoting Baker, 443 U.S. at 146). "Absent the existence of an underlying constitutional right, no section 1983 claim will lie." Wideman, 826 F.2d at 1032.

A.    **Alleged First Amendment Violations**

1.    **First Amendment Turner Claim (Count I)**

"'[P]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). However, these rights are limited by the requirements of the "inordinately difficult undertaking" of prison administration. Id. To strike an appropriately deferential balance between these values, prison regulations that impinge on constitutional rights, including the First Amendment rights of prisoners and non-prisoners to communicate via mail, are valid only if the regulation is reasonably

related to legitimate penological interests. Turner, 482 U.S. at 89; Perry v. Sec'y, Fla. Dep't of Corr., 664 F.3d 1359, 1364 (11th Cir. 2011).

Avid alleges that the Policy, as applied, excludes community-based brick-and-mortar bookstores but not certain bookstores like Amazon and Barnes & Noble. Compl. ¶ 13. Avid also alleges that this exclusion is not reasonably related to the Jail's security concerns about contraband smuggling because book shipments from Avid do not pose a heightened risk compared to shipments from a warehouse or large bookstore chain. Id. ¶¶ 73-75, 92-93. In seeking dismissal of Avid's Turner claim, Defendants contend that the as-applied brick-and-mortar exclusion is reasonable as a matter of law because it allows book shipments from publishers *and* authorized retailers, whereas courts have upheld more restrictive "publishers-only" rules that only allow book shipments from publishers. Defs.' Br. at 5-7. However, Defendants do not point to any binding authority to support this contention. See id. In the alternative, Defendants argue that Avid's claim should be dismissed because the Policy is reasonable under Turner. Id. at 5, 7.

The Supreme Court in Turner set forth a four-factor test to determine whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

(2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests. Turner, 482 U.S. at 89-91.

The Turner analysis is fact-intensive, and courts in this Circuit have held that such an analysis "can only be resolved at the summary judgment stage or at trial." Jarrard v. Moats, No. 4:20-CV-2-MLB, 2021 WL 1192948, at *7 (N.D. Ga. Mar. 30, 2021) (quoting Garber v. Conway, No. 1:15-CV-00123-AT-JCF, 2016 WL 11545539, at *4 n.3 (N.D. Ga. Apr. 19, 2016), R&R adopted, No. 1:15-CV-00123-AT-JCF, 2016 WL 11545538 (N.D. Ga. May 20, 2016). Defendants' argument that the brick-and-mortar exclusion is reasonably related to the legitimate penological interest of preventing contraband smuggling "is too vague to permit meaningful application of the Turner test, especially at [the motion to dismiss] stage of the litigation." Id. (citing Profit v. Rabon, 2020 WL 687590, at *4 (N.D. Fla. Jan. 9, 2020) R&R adopted, No. 1:19CV-129-MW/GRJ, 2020 WL 674427 (N.D. Fla. Feb. 11, 2020)). "The parties will instead need to develop a record

before the Court can engage in the proper <u>Turner</u> inquiry." <u>Profit</u>, 2020 WL 687590, at *4.

Development of a factual record is particularly important where, as here, the "complaint affirmatively undermines Defendants' purported security concerns." <u>Moats</u>, 2021 WL 1192948, at *7. Avid's allegation that the brick-and-mortar exclusion provides no appreciable safety increase undermines Defendants' assertions that the exclusion prevents contraband shipment. At the motion to dismiss stage, the Court accepts all allegations in the Complaint as true and draws all reasonable inferences in Avid's favor. <u>McGinley</u>, 361 F.3d at 1330. As such, "[t]he Court concludes that whether this . . . policy is reasonably related to a legitimate penological interest is not appropriate for resolution as a matter of law at the motion to dismiss stage." <u>Althouse v. Palm Beach Cty. Sheriff's Office</u>, No. 12-80135-CIV, 2012 WL 4458287, at *2 (S.D. Fla. Sept. 21, 2012).

Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Count I.

### 2. Prior Restraint and Unconstitutional Permitting Scheme Claims (Counts II and III)

Under Counts II and III, Avid claims that the existence of a pre-approval requirement generally (as opposed to the brick-and-mortar exclusion specifically) is a permitting scheme and prior restraint on expression, each of which typically face heightened scrutiny. Compl. ¶¶ 104, 111 (citing, inter alia, <u>Wright v. City of</u>

11

St. Petersburg, 833 F.3d 1291, 1298 (11th Cir. 2016)).  Avid further alleges that

the Policy grants jail officials unbridled discretion in violation of the First

Amendment.  Compl. ¶¶ 110-11.  However, the Supreme Court has held that First

Amendment challenges to "regulations affecting the sending of a 'publication' . . .

to a prisoner must be analyzed under the Turner reasonableness standard."

Thornburgh, 490 U.S. at 413.  The Eleventh Circuit also has held that Turner

applies even to claims based on the First Amendment rights of non-inmates to

communicate with inmates.  Perry, 664 F.3d at 1363.  Therefore, the Turner

standard applies to Avid's Counts II and III claims, rather than the heightened

scrutiny standards for permitting schemes and prior restraints.

        To state a claim that the Policy's general pre-approval requirement is

unreasonable under Turner, Avid must allege that it is unreasonable under the four

Turner factors.  Turner, 482 U.S. at 89-91.  However, Avid's claims in Counts II

and III rely on heightened scrutiny and do not allege that the general pre-

authorization requirements lack a rational connection to a legitimate penological

interest, that there are not alternative means, that accommodating Avid's claim will

have minimal impact, or that there is no alternative that fully accommodates the

rights.  See Compl. ¶¶ 102-111.  Consequently, Avid does not sufficiently state

claims that the Policy constitutes a prior restraint or an unconstitutional permitting scheme.[2]

Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Counts II and III of Avid's Complaint.

## B.    Fourteenth Amendment Unconstitutional Vagueness Claim (Count IV)

Defendants argue that <u>Turner</u> subsumes any separate vagueness analysis when the contested regulation relates to prisons.  Defs. Br. at 11.  However, for

---

[2] On September 24, 2024, Avid filed a Notice of Supplemental Authority [Doc. 22], which cites <u>Jarrard v. Sheriff of Polk Cnty.</u>, 115 F.4th 1306 (11th Cir. 2024), and asserts that the case supports its argument that the Policy is a prior restraint that violates the First Amendment and that Avid's rights were clearly established. Notice of Suppl. Authority at 1-2.  Defendants subsequently submitted a Motion for Leave to File a Response to Plaintiff's Notice of Supplemental Authority [Doc. 23].  Although at the motion to dismiss phase <u>Jarrard</u> considered application of both a <u>Turner</u> analysis and a substantial burden test to the plaintiffs' free exercise First Amendment claim, <u>Moats</u>, 2021 WL 1192948, at *7, there was no discussion of <u>Turner</u> at later stages in the litigation.  <u>See</u> <u>Jarrard</u>, 115 F.4th at 1320-23; <u>see generally</u> <u>Jarrard v. Moats</u>, No. 4:20-CV-2-MLB, 2022 WL 18586257 (N.D. Ga. Sept. 27, 2022), <u>rev'd and remanded sub nom.</u> <u>Jarrard v. Sheriff of Polk Cnty.</u>, 115 F.4th 1306 (11th Cir. 2024).  On appeal, the Eleventh Circuit considered only the <u>Jarrard</u> plaintiff's retaliation and unbridled discretion claims based on a policy excluding him from a jail volunteer minister program.  <u>Jarrard</u>, 115 F.4th at 1315-16.  The case did not involve a prison mail regulation, and did not cite <u>Turner</u>, which controls Avid's permitting scheme and prior restraint claims.  <u>See generally id.</u>  Therefore, <u>Jarrard</u> is not applicable to this case, and the Court sees no need for a response to Avid's Notice of Supplemental Authority.  Accordingly, Defendants' Motion [Doc. 23] is **DENIED AS MOOT**.

claims asserting unconstitutional vagueness claims, the Eleventh Circuit conducts

an analysis separate from <u>Turner</u>, and courts in this Circuit have followed suit.

<u>Torres v. Fla. Dep't of Corr.</u>, 742 F. App'x 403, 406-409 (11th Cir. 2018) (citing

<u>United States v. Williams</u>, 553 U.S. 284, 304 (2008)) (conducting separate <u>Turner</u>

and vagueness analyses); <u>Hum. Rts. Def. Ctr. v. Inch</u>, No. 21-81391-CV, 2022 WL

19486385, at *3-6 (S.D. Fla. Mar. 24, 2022) (same); <u>Lonergan v. Inch</u>, No. 3:18-

CV-812-BJD-JRK, 2021 WL 3550349, at *7-9 (M.D. Fla. Aug. 11, 2021) (same).

Accordingly, the Court undertakes a separate analysis to determine whether Avid

states a viable claim that the Policy is unconstitutionally vague in violation of the

Due Process Clause of the Fourteenth Amendment.

   "A prison regulation is void for vagueness if it fails to provide a person of

ordinary intelligence fair notice of what is prohibited, or is so standardless that it

authorizes or encourages seriously discriminatory enforcement." <u>Hum. Rts. Def.</u>

<u>Ctr. v. Dixon</u>, No. 21-81391-CV, 2022 WL 4243921, at *6 (S.D. Fla. Aug. 24,

2022) (quoting <u>Torres</u>, 742 F. App'x at 408) (internal quotations omitted).

"Whether the focus is on lack of notice or lack [of] standards for enforcement, the

vagueness doctrine keeps people from having to guess what the law prohibits."

<u>Doe 1 v. Marshall</u>, 367 F. Supp. 3d 1310, 1333 (M.D. Ala. 2019).  Avid contends

that the Policy, on its face, is unconstitutionally vague in violation of the

Fourteenth Amendment because it does not:

> (a) identif[y] which book sellers the Jail has designated as Authorized
> Retailers, (b) contain[] any criteria or standards for designating
> Authorized Retailers, (c) set[] forth any process for applying to become
> an Authorized retailer, or (d) provide[] any process for appealing being
> denied Authorized Retailer status.

Compl. ¶ 16.

Defendants argue that the Policy is not unconstitutionally vague because

"[persons] of ordinary intelligence need not guess at the meaning of *authorized*."

Defs. Br. at 12.  However, Avid does not challenge the meaning of "authorized,"

but the lack of published standards for the authorization process.

"Unconstitutionally vague laws fail to provide 'fair warning' of what the law

requires."  United States v. Aggison, 661 F. Supp. 3d 1305, 1309 (N.D. Ga. 2023)

(quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).  Avid had

fair warning that the Jail only accepted book shipments from approved vendors but

had no fair warning of how to become an approved vendor.  See Compl. ¶ 64.  It

was only after repeated rejections and inquiries that Avid was able to ascertain how

the Policy was being applied.  Compl. ¶¶ 42-63, 70-77.  Therefore, Avid

sufficiently alleges that the Policy does not provide fair notice of what the Policy

requires.  See VFW John O'Connor Post #4833 v. Santa Rosa Cnty., 506 F. Supp.

2d 1079, 1092 (N.D. Fla. 2007) (finding a zoning ordinance unconstitutionally vague where it allowed for a waiver with a proper showing but provided no definition or guidance for making a proper showing); see also Prison Legal News v. Babeu, 933 F. Supp. 2d 1188, 1202 (D. Ariz. 2013) (finding an unconstitutional vagueness claim against a prison pre-approved vendor mail policy was not moot where the policy did not indicate the which organizations were pre-approved or the criteria becoming pre-approved).

Furthermore, Avid alleges that the Policy's lack of explicit standards authorizes or encourages arbitrary enforcement. Compl. ¶ 116. Avid also alleges that such discriminatory enforcement already occurred because the exclusion of Avid and inclusion of Amazon and Barnes & Noble is not based on appreciable differences in safety. Id. ¶¶ 74, 80. "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [government officials] for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned, 408 U.S. at 108-09. Taking the allegations in the Complaint as true, the Policy lacks any published application standards for pre-approving vendors, and Avid alleges that application of the Policy already has resulted in arbitrary application. Compl. ¶¶ 73-74, 115-

16.  Therefore, Avid has sufficiently pleaded that the Policy is unconstitutionally vague because it lacks enforcement criteria and encourages arbitrary enforcement. See Gray v. Kohl, No. 07-10024-CIV, 2007 WL 9702460, at *4, 7 (S.D. Fla. June 29, 2007), R&R adopted, No. 07-10024-CIV, 2007 WL 9702480 (S.D. Fla. Nov. 14, 2007) (finding a statute prohibiting presence in a school zone without legitimate business unconstitutionally vague where it contained no guidelines for enforcement because it permitted and encouraged discriminatory and arbitrary enforcement); see also Babeu, 933 F. Supp. 2d at 1202 (quoting Cohen v. San Bernardino Valley Coll., 92 F.3d 968, 972 (9th Cir.1996)) (finding an unconstitutional vagueness claim against a prison pre-approved vendor mail policy was not moot because the policy lacked enforcement criteria and therefore allowed "the possibility if not the likelihood that the jail is resolving such matters 'on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'").

Accordingly, the Court finds that Avid sufficiently alleges a claim that the Policy is unconstitutionally vague in violation of the Fourteenth Amendment. Defendants' Motion to Dismiss is **DENIED** as to Count IV.

C.    **Qualified Immunity**

To avoid individual liability for damages under Section 1983, public

officials may invoke qualified immunity, which "offers complete protection for

individual public officials performing discretionary functions 'insofar as their

conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'"[3] Sherrod v. Johnson, 667 F.3d

1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)).  Avid does not contest that Defendants acted within their discretionary

authority while operating the Jail, including enforcing the Policy.  Pl.'s Opp'n to

Defs.' Mot. to Dismiss ("Pl.'s Opp'n") [Doc. 14] at 18.

"Once discretionary authority is established, the burden then shifts to the

plaintiff to show that qualified immunity should not apply." Lewis v. City of W.

Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009).  A plaintiff demonstrates that

qualified immunity does not apply by showing: "(1) the defendant violated a

---

[3] Qualified immunity does not apply to bar claims for declaratory or injunctive
relief.  Pearson v. Callahan, 555 U.S. 223, 242-43 (2009) (citing Cnty. of
Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998) (noting that qualified
immunity is unavailable "in a suit to enjoin future conduct, in an action against a
municipality, or in litigating a suppression motion")); Benning v. Comm'r, Ga.
Dep't of Corr., 71 F.4th 1324, 1335 (11th Cir. 2023) (stating that qualified
immunity "may not be effectively asserted as a defense to a claim for declaratory
or injunctive relief") (quoting Ratliff v. DeKalb Cnty., 62 F.3d 338, 340 n.4 (11th
Cir. 1995)).

constitutional right, and (2) the right was clearly established at the time of the alleged violation." Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009). A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)). There are three methods to show that the government official had fair warning:

> First, the plaintiffs may show that a materially similar case has already been decided. Second, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant state supreme court].

Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (quotation marks, citations, and alterations omitted).

The first method "looks at the relevant case law at the time of the violation; the right is clearly established if 'a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law.'" Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (alterations in original) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1333 (11th Cir. 2008)). While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." Coffin, 642 F.3d at 1013; see also Gennusa v. Canova, 748 F.3d 1103, 1113 (11th Cir. 2014) (citation and internal quotation marks omitted) ("We do not always require a case directly on point before concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate."). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (citation and internal quotation marks omitted).

The second and third methods, known as "obvious clarity" cases, exist when "case law is not needed" to demonstrate the unlawfulness of the conduct or where the existing case law is so obvious that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Vinyard v. Wilson, 311 F.3d 1340, 1351

(11th Cir. 2002). Such cases are rare. <u>See, e.g.</u>, <u>Santamorena v. Ga. Military Coll.</u>, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) (noting that "these exceptional cases rarely arise").

### 1.    Count I

Avid asserts that case law at the time of the challenged acts clearly established that Avid had a protected First Amendment interest, and that the Policy is only valid if it satisfies the <u>Turner</u> test. Pl.'s Opp'n at 19. While Avid provides an accurate statement of the law, it does not follow that it would be obvious to Defendants that their conduct was unreasonable under <u>Turner</u>. <u>Coffin</u>, 642 F.3d at 1015 (an "official's awareness of the existence of an abstract right . . . does not equate to knowledge that his conduct infringes the right.").

Avid further argues that dismissal of their claims on qualified immunity grounds is improper because questions of fact as to whether the Policy fails under <u>Turner</u> warrant discovery. Pl.'s Opp'n at 19. However, the operative question when considering a qualified immunity defense is not whether issues of fact exist so as to warrant discovery, but whether, as a matter of law, the constitutional right was clearly established such that Defendants' actions were unreasonable. <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015). This inquiry should not be framed at a high level of generality but must be focused on whether the "violative nature of *particular*

conduct is clearly established." Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). "It is particularly difficult to overcome the qualified immunity defense in the First Amendment context[]" because of the specific fact scenario inherent in an individual case. Gaines v. Wardynski, 871 F.3d 1203, 1210 (11th Cir. 2017). Avid's concession that the facts of this case present an "issue of first impression," Pl.'s Opp'n at 14-15, belies its argument that its rights in this context were clearly established. See, e.g., Hanson v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994) (noting that decisions involving First Amendment challenges to government actors "tilt strongly in favor of immunity" and only in rare cases will it be found that a reasonable official should have known he violated "clearly established" law). Further, Avid does not direct the Court to any materially similar, binding case law wherein the court conducted a Turner analysis of an as-applied challenge to a prison pre-approved vendor mail policy. See id. at 18-19.

Because Avid has failed to sufficiently allege that its constitutional right under the First Amendment was clearly established at the time of the violation, Defendants are entitled to qualified immunity. Defendants' Motion to Dismiss is **GRANTED** as to Count I against Taylor and Haynes in their individual capacities to the extent that Avid seeks to recover monetary damages from Defendants.

### 2.    Count IV

Avid asserts that "it is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined . . . . A vague law impermissibly delegates basic policy matters to [government officials] for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Pl.'s Opp'n at 24 (quoting Grayned, 408 U.S. at 108-09). However, Avid does not provide any binding cases with specific holdings finding a prison pre-approved vendor mail policy unconstitutionally vague.[4] See id. at 25.

In the absence of materially similar, binding case law, Avid must rely on the "obvious clarity" of the alleged constitutional violation. Coffin, 642 F.3d 999 at 1015 (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir.1997)) ("Our case law has made clear that obvious clarity cases will be rare. 'Thus, [i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'"). Under the high standard of "obvious clarity," especially

---

[4] "While it is true that 'only binding precedent can clearly establish a right for qualified immunity purposes,' non-binding persuasive authority can be used to indicate that a particular constitutional right is not clearly established." Corbitt v. Vickers, 929 F.3d 1304, 1319 (11th Cir. 2019) (first quoting Gilmore v. Hodges, 738 F.3d 266, 279 (11th Cir. 2013), then citing Denno v. School Bd. of Volusia Cnty., 218 F.3d 1267, 1272-75 (11th Cir. 2000)).

considering the lack of factual precedent, Defendants could have reasonably believed they met the required minimal standards of specificity by publishing a written policy and providing additional information when requested.  See Martin v. Chancellor for Bd. of Regents of Univ. Sys. of Georgia, No. 22-12827, 2023 WL 4131443, at *6 (11th Cir. June 22, 2023) (noting that application of "obvious clarity" is usually reserved for excessive force cases); see also Wolfel, 972 F.2d at 719 (finding no "obvious clarity" where prison officials' implementation of a published regulation was unconstitutionally vague because "[the court] cannot say that no reasonable official, even knowing of the general requirements of notice and specificity, could have thought that the regulation provided sufficient notice . . . ."). Because Avid has failed to sufficiently allege that its constitutional right under the Fourteenth Amendment was clearly established at the time of the violation, Defendants are entitled to qualified immunity.

Defendants' Motion to Dismiss is **GRANTED** as to Count IV against Taylor and Haynes in their individual capacities to the extent that Avid seeks money damages from Defendants.

## D.    Redundancy of Official Capacity Claims

Defendants assert that the official capacity claims against Haynes are redundant to the official capacity claims against Taylor.  Defs.' Br. at 14.  Avid

fails to respond to this argument, and the Court deems it unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); LR 7.1B, NDGa ("Any party opposing a motion shall serve the party's response . . . not later than fourteen (14) days after service of the motion . . . . Failure to file a response shall indicate that there is no opposition to the motion.").

Under Section 1983, a suit against a government official in his official capacity is deemed to be a suit against the entity that employs the official. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009) (citing Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999)). The Gwinnett County Jail is operated by the Gwinnett County Sheriff's Office, which employs both Taylor and Haynes. Compl. at ¶ 9. Thus, each of Avid's claims against Taylor and Haynes in their official capacities is the functional equivalent of suing the Gwinnett County Sheriff's Office. Butler v. Prison Health Servs., 294 F. App'x 497, 499 (11th Cir. 2008).

Although an official capacity suit against Defendants is the correct mechanism to assert liability against the Gwinnett County Sheriff's Office,

redundant claims may be dismissed. See Johnson v. Columbus Consol. Gov't, No. 4:19-CV-119 (CDL), 2020 WL 3472919, at *4 (M.D. Ga. June 25, 2020) ("[S]heriff's departments and police departments are not usually considered legal entities subject to suit" and therefore the proper defendant was the sheriff in her official capacity); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (finding that keeping officers sued in their official capacity and the city as named defendants would be redundant and possibly confusing).

However, official capacity claims against two named defendants are distinct from a claim against a government entity and a named defendant, and do not threaten confusion at this stage in the litigation. See Henderson v. Nwokocha, No. 1:17-CV-2627-AT-JSA, 2018 WL 11511185, at *6 (N.D. Ga. Feb. 8, 2018), R&R adopted, No. 1:17-CV-2627-AT, 2018 WL 11511211 (N.D. Ga. Mar. 5, 2018) (declining to dismiss official capacity claims against two named defendants before discovery because "the Court finds no reason why the case would be so seriously confused at this stage of the litigation by the manner of pleading as to require the remedy of partial dismissal at this time" and "[e]ach of Plaintiff's two pairs of official-capacity claims . . . is independently a valid form of pleading).

Accordingly, Defendants' Motion to Dismiss is **DENIED** as to all claims against Haynes in his official capacity.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint [Doc 11] is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** with respect to the following claims, which are **DISMISSED**:

- The First Amendment <u>Turner</u> (Count I) and the Fourteenth Amendment unconstitutional vagueness (Count IV) claims against Defendants Keybo Taylor and Benjamin Haynes in their individual capacities for monetary damages;

- The First Amendment prior restraint claim (Count II);

- The First Amendment unconstitutional permitting scheme claim (Count III).

The motion is **DENIED** with respect to the following claims, which remain pending:

- The First Amendment claim (Count I) against Defendants Keybo Taylor and Benjamin Haynes in their official capacities and against Defendants Keybo Taylor and Benjamin Haynes in their individual capacities to the extent that Plaintiff only seeks equitable relief;

- The Fourteenth Amendment unconstitutional vagueness claim (Count IV) against Defendants Keybo Taylor and Benjamin Haynes in their official capacities and against Defendants Keybo Taylor and Benjamin Haynes in their individual capacities to the extent that Plaintiff only seeks equitable relief.

It is further **ORDERED** that Defendants' Motion for Leave to File a Response to Plaintiff's Notice of Supplemental Authority ("Motion for Leave to File") [Doc. 23] is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 19th day of November, 2024.

MARK H. COHEN
United States District Judge

28